## ANDERSON

v.

## HEARST PUB. CO., Inc. et al.
### No. 16075–C.

United States District Court
S. D. California, Central Division.
April 20, 1954.

Keatinge, Arnold & Zack, George L. Arnold, Los Angeles, Cal., for plaintiff.

Lawler, Felix & Hall, A. Laurence Mitchell, John M. Hall, Los Angeles, Cal., for defendant, Hearst Pub. Co. Inc.

JAMES M. CARTER, District Judge.

The plaintiff brought this action for libel against the Hearst Publishing Company Inc., and Westbrook Pegler. No service has been made on Pegler, but the Hearst Publishing Company Inc., hereafter called the defendant, moved to dismiss for failure to state a claim. The case is here on the basis of diversity of citizenship.

## I.

### The Demand for Retraction.

The alleged libel was a lengthy article, three columns by ten inches. Contained

therein were eight references to the plaintiff. The plaintiff demanded a retraction of "certain statements regarding me which are untrue, libelous and damaging." The defendant filed no retraction. Defendant contends that since no special damages have been pleaded, and since plaintiff's demands for retraction did not comply with Section 48a of the Civil Code of the State of California, he therefore cannot recover general or exemplary damages and hence the motion to dismiss should be granted.

Section 48a(1) of the Civil Code of the State of California provides that in an action against a newspaper for libel, the plaintiff shall recover no more than special damages unless a demand for a correction has been made and such correction is not made by the publisher of the newspaper. The section states in part, "plaintiff shall serve upon the publisher * * * a written notice *specifying the statements claimed to be libelous* and demanding that the same be corrected", within twenty days after knowledge of the publication. [Emphasis added.] The full text of the pertinent part of section is set forth in the margin.[1]

The first amended complaint alleges publication on November 24, 1952. It alleges demands for retraction on November 28 and December 3, 1952, and sets forth copies of the demands. Each of the demands stated:

"Your issue of November 24th, 1952, carried, under the by-line of Westbrook Pegler, certain statements regarding me which are untrue, libelous and damaging * * ", and demanded appropriate retraction.

Section 48a Civil Code defines "special damages" as,

"* * * damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other * * *."

No special damages were pleaded in the first amended complaint. It seeks general damages coming within the definition in Section 48a, as "damages for loss of reputation, shame, mortification and hurt feelings". It also seeks exemplary damages.

"When special damage is claimed, the nature of the special loss or injury must be particularly set forth * * *" and "it is necessary that the declaration should set forth precisely in what way the special damage resulted. * * *" Pollard v. Lyon, 1875, 91 U. S. 225, 237, 23 L.Ed. 308. In California it is well settled that the specific facts which are said to give rise to special damages must be pleaded. Peabody v. Barham, 1942, 52 Cal.App.2d 581, 585, 126 P.2d 668. XII California Law Review 225 (and cases cited at page 239, et seq.); see, 8 Cal.Juris. page 890.

Section 48a, Civil Code has been before the California courts and has been held constitutional. Werner v. Southern California etc. Newspapers, 1950, 35 Cal.2d 121, 216 P.2d 825, 13 A. L.R.2d 252; Pridonoff v. Balokovich, 1951, 36 Cal.2d 788, 228 P.2d 6; Jefferson v. Chronicle Publishing Co., 1952, 108 Cal.App.2d 538, 238 P.2d 1018, 241

---

1. "§ 48a. [Demand and publication or broadcast of correction.] 1. [Failure to demand or publish or broadcast correction: Damages: Service of demand.] In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous."

P.2d 20, appeal to the U. S. Supreme Court dismissed for want of a substantial federal question, 344 U.S. 803, 73 S.Ct. 18, 97 L.Ed. 626, and 344 U.S. 882, 73 S.Ct. 164, 97 L.Ed. 683.

From the foregoing it appears that unless the demands made by the plaintiff upon the publisher, amount to a demand for a correction as provided in Section 48a, Civil Code, plaintiff has stated no case and the action should be dismissed.

The word "certain" is defined in Webster's International Dictionary, Second Edition, in several ways: (1) fixed or stated; precise, exact; (2) one or some among possible others. As used in the demand for retraction, the words "certain statements" were used by the plaintiff with the latter meaning. See Wilhite v. Armstrong, 328 Mo. 1064, 43 S.W.2d 422, 423.

The plaintiff contends that since there is no law in California on the subject,[2] and since the California statute was patterned after the Minnesota statute, that Uhlman v. Farm Stock & Home Company, 126 Minn. 239, 148 N.W. 102, 103, controls. But in that case the alleged libel was a short one and the demand for retraction specifically stated, "that the article published by you * * was and is libelous * * *." Thus, the plaintiff there claimed that the entire statement was libelous.

■ We cannot disregard the plain language of the California statute, Section 48a, Civil Code, that the plaintiff shall serve "a written notice *specifying the statements* claimed to be libelous". [Emphasis added.] Plaintiff did not do this.

Accordingly, we hold that no demand for a correction complying with the California statute was served upon the publisher and that therefore plaintiff cannot recover general or exemplary damages. Since he has not pleaded special damages, he has not by his present pleadings stated a claim for relief.

## II.

### Publications Outside California.

The first amended complaint alleges that the defendant prints, publishes and circulates the Los Angeles Examiner, a daily paper in which the alleged libel appears, throughout the county of Los Angeles. No circulation or publication elsewhere is alleged.

Plaintiff now moves to amend in order to show publication by the Los Angeles Examiner in other states than California, and particularly in Washington, Oregon and Nevada, such other states having, so plaintiff contends, no laws requiring a demand for retraction. Such an amendment, plaintiff contends, would permit him to pursue in this court his cause of action, if any, arising from the publications in such other states.

■ " * * * a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State." Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, and it must follow the laws of the state in which it sits. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Assuming that the proposed amendment would show publication in other states, whose laws would permit a recovery on the facts of this case, we then have a conflict of laws between the law of the State of California and the law of those other states.

■ As part of the Erie R. Co. v. Tompkins doctrine, the federal court sitting in California in a diversity of citizenship case must follow the conflict of laws rule applied by California courts.

---

2. See Harris v. Curtis Publishing Co., 1942, 49 Cal.App.2d 340, 354, 121 P.2d 761, 768, where plaintiff's counsel wrote that "No mere retraction * * * could possibly atone * * * that unless proper and substantial compensation is made by you, that he will appeal to the courts * * *" and it was held there was no substantial compliance with the statute, Section 48a, Civil Code.

854

Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477. There the Supreme Court held, 313 U.S. at page 496, 61 S.Ct. at page 1021:

"* * * We are of opinion that the prohibition declared in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, against such independent determinations by the federal courts extends to the field of conflict of laws. The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise, the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side. * * *"

To the same effect is Griffin v. McCoach, 1941, 313 U.S. 498, 503, 61 S.Ct. 1023, 85 L.Ed. 1481; 9 Cir., 1941, 123 F.2d 403, 406, holding that "in diversity of citizenship cases, the federal courts must follow the conflict of laws rules prevailing in the States in which they sit"; and Wallan v. Rankin, 9 Cir., 1949, 173 F.2d 488, 490.

In Tademy v. Scott, 5 Cir., 1946, 157 F.2d 826, 827, a libel case with jurisdiction based on diversity of citizenship, the court held that a Georgia statute providing for at least five days notice before instituting such action, specifying the article and the statements which the plaintiff claimed to be false, "fixes and declares the policy of the State of Georgia in actions such as this, and it is clear that had this case been brought in the state court it would have been held to be prematurely brought."

Restatement, Conflict of Laws § 384 recognizes the general rule in torts. "Recognition of a foreign cause of action. (1) If a cause of action is created at the place of wrong, a cause of action will be recognized in other states." § 612 of the Restatement (supra) states one exception. "Action contrary to public policy. No action can be maintained upon a cause of action

created in another state, the enforcement of which is contrary to the strong public policy of the forum." The "comment" following § 612 (supra) points out that "A mere difference between the laws of the two states will not render the enforcement of a cause of action created in one state contrary to the public policy of the other."

"In California, conformably with the general rule, it is held that an action in tort is governed by the law of the jurisdiction where the tort was committed, and the action being transitory it may be maintained in any jurisdiction where the defendant is found. * * * The local courts will enforce the foreign law if not contrary to the public policy of the forum, to abstract justice or pure morals, or injurious to the public welfare." Wallan v. Rankin, supra, 173 F. 2d 490.

The California rule is well stated in Schultz v. Union Pacific R. R. Co., 1953, 118 Cal.App.2d 169, at page 178, 257 P. 2d 1003, at page 1009, where Justice Vallee states the general rule and collects the California cases in note 17. He then states 118 Cal.App.2d at pages 178–179, 257 P.2d at page 1009, "There is the limitation that the law of the sister state be not contrary to the express provisions of the law or the public policy of California, to abstract justice or pure morals, or injurious to the people" and cites Hudson v. Von Hamm, 1927, 85 Cal.App. 323, 259 P. 374 and Thome v. Macken, 1943, 58 Cal.App.2d 76, 136 P. 2d 116.

Hudson v. Von Hamm supra, involved an action in a California court against a father for the torts of his minor children committed in Hawaii. The laws of Hawaii held a father liable. The laws of California imposed no such liability. The case then involved only a difference in the laws of the two jurisdictions. No attempt is made in the case to spell out the public policy involved. The case rests squarely on a difference in law. But the case is California law and is cited for the exception to the general

rule, in Schultz v. Union Pacific R. R. Co., supra.

Thome v. Macken, supra, is more analogous to the case at bar. This case involved Section 43.5 of the California Civil Code abolishing causes of action for alienation of affection. The court said, 58 Cal.App.2d at page 81, 136 P.2d at page 119:

"While the legislature of this state in enacting section 43.5 supra, *did not expressly declare that the actions proscribed thereby are contrary to public policy, we doubt not that they constitute such a declaration.*"[3] [Emphasis added.]

The California court cited 12 Am.Jur., page 668, regarding the sources of public policy:

"Where there are constitutional or statutory provisions, they govern as to what is the public policy. Where the lawmaking power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is *what the statute enacts.*" [Emphasis added.]

The California court also cited U. S. v. Trans-Missouri Freight Association, 166 U.S. 290, 340, 17 S.Ct. 540, 559, 41 L.Ed. 1007:

"The public policy of the government is to be found in its statutes, and, when they have not directly spoken, then the decisions of the courts * * * but when the lawmaking power speaks upon a particular subject * * * public policy in such a case is *what the statute enacts.*" [Emphasis added.]

The court spelled out in Thome v. Macken, supra, its basis for holding Section 48a, Civil Code to be an expression of public policy. The court said, 58 Cal.App.2d at page 83, 136 P.2d at page 120: "This court cannot ignore what it knows to be the fact, that the abolition by the legislature of this state of causes of action for alienation of affections was a recognition of the changing social and legal status of women, and a declaration of the broad social trend of opinion that the abolition of such actions would tend to improve public morals and serve the best interests of the people of the state.

"We therefore conclude that section 43.5 of the Civil Code constitutes an expression of public policy, and that the courts of this state properly may decline to accept jurisdiction of causes of action for alienation of affection arising in other states."[4]

"We have to inquire whether the enforcement of the cause[s] [in the case at bar] runs counter to the public policy of the forum, or to principles of abstract justice or good morals" obtaining in California. Wallan v. Rankin, supra, 173 F.2d at page 491. That case concerned wrongful death statutes in California and Oregon and the court concluded, 173 F.2d at page 492:

"Where in the forum as well as in the jurisdiction where the tort occurred a right of recovery for such a tort exists it is notable that differences between the foreign law and that of the forum, even though of major consequence, are not thought an impediment to enforcement."

The court held the maintenance of the actions did not "offend any fundamental policy of the state", at page 492, but pointed out in footnote No. 5, at page 492, that "Two cases, Thome v. Macken [supra] and Hudson v. Von Hamm, [supra] are called to our attention illustrative of the other side of the picture."

We so inquire. Inherent in Werner v. Southern California etc. Newspapers, supra, is the holding of the court, that the legislature, in enacting Section 48a, Civil Code, was declaring the public policy of the state. After discussing

---

3. Accord Ikuta v. Ikuta, 1950, 97 Cal.App. 2d 787, 790, 218 P.2d 858 (alienation of affections); Langdon v. Sayre, 1946, 74 Cal.App.2d 41, 46, 168 P.2d 980.

4. Accord, Fahy v. Lloyd, D.C.Mass.1944, 57 F.Supp. 156. See 158 A.L.R. 629; note 21 A.L.R.2d 247, 261.

possible *bases* for the action of the legislature, the court said, 35 Cal.2d at page 129, 216 P.2d at page 830: "It is for the Legislature, however, to choose between conflicting policies * * *".5

■ True, no California court has said expressly that Section 48a, Civil Code reflects the policy of the state, nor has a California court said that Section 48a, Civil Code will prevent a litigant from maintaining in a California court an action for libel arising in another state. Since we must follow California laws, we must by analogy, determine what the California law is, or determine what California courts will decide when the precise question arises.

Since the Caifornia courts have held that Section 43.5 of the Civil Code constitutes a declaration of public policy, it follows that Section 48a of the Civil Code likewise constitutes a declaration of public policy. Though neither statute states it is declaring public policy, we see no reason for applying the rule to one section and not the other. We rest our decision on this basis, rather than the one that California law is in conflict with foreign law. See Hudson v. Von Hamm, supra. We believe enforcement in California of a cause of action for libel, arising in another state, and where plaintiff runs afoul of Section 48a, Civil Code of California, offends against the public policy of the state of California.

■ We hold that Section 48a of the Civil Code of California declares the public policy of the state of California and that recovery will not be permitted in a California court for the tort of libel occurring in a foreign state, when the recovery for such tort, if it had occurred in California, would not be permitted in the California court because of Section 48a Civil Code. We further hold, that in an action based on diversity of citizenship, a United States court must follow the conflict of laws rule of the state in which it is located.

The disposition we make of this case avoids the necessity of considering the single publication or multi-state publication rules. We have noted Hartman v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 1 A.L.R.2d 370; certiorari denied 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763, and note the difficulties it involves. The Hartman case is not controlling. We have noted also Mattox v. News Syndicate Co., 2 Cir., 1949, 176 F.2d 897, 900, 12 A.L.R.2d 988 and the complex situation that it points out would result from applying the theories of the Hart-

---

5. In Werner v. Southern California etc. Newspapers, supra, the California Supreme Court, in substance, found that section 48a had been passed as a declaration of public policy. That court said, 35 Cal.2d at page 126, 216 P.2d at page 828, "The Legislature could reasonably conclude that recovery of damages without proof of injury constitutes an evil.

"It is settled the Legislature may attack the evils of unfounded litigation by abolishing causes of action altogether." It cites the declaration of the New York Legislature upon the abolishment of causes of action for alienation of affection, criminal conversation, seduction and breach of promise, listing the evils and abuses prevalent. The court referred to "unfounded actions based on negligence", 35 Cal.2d at page 127, 216 P.2d at page 829, and said also: "These cases involved the danger of imposing liability when there had been no wrong. The same principles are applicable to the danger of imposing excessive liability when no actual damages have been proved. Moreover, in the common law of slander, as distinct from libel, there is ample precedent for denying any recovery unless special damages are proved." 35 Cal.2d at page 127, 216 P.2d at page 829. "* * * we cannot say that the Legislature could not reasonably conclude that the danger of excessive recoveries of general damages in libel actions justified limitation of recovery to special damages when a retraction has not been demanded and refused.

"Nor can we take exception to the second basis upon which the Legislature could justify its limitation of recovery to special damages, namely, the public interest in the free dissemination of news." 35 Cal.2d at page 128, 216 P. 2d at page 829.

"It is for the Legislature, however, to choose between conflicting policies * * *". 35 Cal.2d at page 129, 216 P.2d at page 830.

man case. In Spanel v. Pegler, 7 Cir., 1947, 160 F.2d 619, 621, 171 A.L.R. 699, the court, without discussion, declared that the law of the forum controlled.

We note also O'Reilly v. Curtis Publishing Co., D.C.Mass.1940, 31 F. Supp. 364; Hartmann v. American News Co., D.C.Wis.1947, 69 F.Supp. 736; Prosser, "Interstate Publication," 51 Mich. Law Review, 959, 964–965. We find nothing in these authorities to change our decision.

By our decision we avoid the problems inherent in at least some of the last cited authorities.

The motion for permission to file an amended complaint is denied; the motion of defendant, Hearst Publishing Company Inc., to dismiss for failure to state a claim for relief is granted.

Defendant will prepare, serve and file, pursuant to the rules of this court, a judgment incorporating the above ruling.